UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

―――――

JERRY VANDIVER,

                Plaintiff,              Case No. 1:14-cv-350

v.                                  Honorable Robert J. Jonker

PRISON HEALTH SERVICES, INC. et al.,

                Defendants.

_____/

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. §§ 1983 and 1985. The Court has granted Plaintiff leave to proceed *in forma pauperis*. Under the Prison Litigation Reform Act, PUB. L. NO. 104-134, 110 STAT. 1321 (1996), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim against Defendants Steele, Abdellatif, Pandya, Masselink, Stepp, Remensnyder, Minnerick, Berghuis, Duane Waters Health Center Optometry Eye Clinic, TLC Optometry Eye Clinic, Spitters, and Brewer. The Court will serve the complaint against Defendants Prison Health Services, Inc., Corizon, State of Michigan, Michigan Department of Corrections, Ingraham, Swartz, Curtis, Gamez, Worel, Gracik, and Brewer.

## Discussion

I.      Factual allegations

Plaintiff Jerry VanDiver presently is incarcerated with the Michigan Department of Corrections (MDOC) at the Earnest C. Brooks Correctional Facility (LRF), though the actions about which he complains also occurred while he was housed at the Lakeland Correctional Facility (LCF) and the Duane Waters Health Center (DWHC) Optometry Eye Clinic.  Plaintiff sues Prison Health Services, Inc (PHS), Corizon, the State of Michigan, the MDOC, the DWHC, and TLC Optometry Eye Clinic (TLC), as well as numerous individuals employed by the MDOC, LRF, LCF, and DWHC: MDOC Senior Regional Medical Director John Steele; MDOC Regional Medical Officer at LRF Dr. Haresh Pandya; LRF Dr. Badawi Abdellatif; retired PHS Dr. John Masselink; Physician's Assistant (PA) Daniel F. Spitters; LCF Nurse Practitioner (NP) Raymond Ingraham; LCF Registered Nurse (RN) Diana Swartz; LCF Medical Records Supervisor Sharon Curtis; LCF Grievance Coordinator and Misconduct Hearing Investigator T. Stepp; DWHC RN Gary Remensnyder; LRF Health Unit Manager (HUM) Judy Gracik; LRF Doctors Wilfredo Gamez and Richard Worel; LRF Nurse Supervisor Sherri Castenholz; LRF Deputy Warden Sean Brewer; LRF Correctional Officer and acting Greivance Coordinator Jeffery Minnerrick; and LRF Warden Mary Berghuis.

Plaintiff is a diabetic who also suffers from Hepatitis C, hypertension, peripheral vascualr disease, and partial blindness caused by glaucoma, possibly resulting from his diabetes.  In his 55-page complaint, Plaintiff complains about his medical treatment between 2010 and the present.[1]  Plaintiff alleges few specific facts about the conduct of individual Defendants.  Instead,

---

[1]This is the eighteenth case Plaintiff has filed in this district.  He also has filed numerous cases in the Eastern District of Michigan.  Many of those cases have involved claims that he has received inadequate medical care during his imprisonment.  Because at least three of his cases have been dismissed as frivolous malicious or for failure to state a

most of his extensive complaint consists of repetitive, conclusory paragraphs claiming violations of his rights under Title II of the Americans with Disabilities Act, 42 U.S.C. § 12131, the First, Eighth and Fourteenth Amendments, and conspiracy to commit such violations by 23 Defendants at three different MDOC facilities over a period of more than four years.  He generally claims that poor treatment of his diabetes led to the partial amputation of his right foot on March 14, 2011, and to another partial amputation of that foot on May 15, 2012.  He also alleges that his vision impairments have not been properly treated or accommodated.  He alleges that all Defendants either knew about his medical needs or should have known about them and nevertheless failed to ensure that he received the treatment he needed or desired.  Further, he claims that Defendants' acts and failures to act were taken in retaliation for Plaintiff's filing of grievances.

In one of the first sets of general factual allegations, Plaintiff alleges that, on May 10, 2010, Defendants Steele, Abdellatif, Pandya, Masselink and Spitters acted jointly and in conspiracy with one another to unjustifiably discontinue some unspecified treatment or accommodation for his disability.  (Compl. ¶ 35, Page ID#15.)  He asserts that prior to May 28, 2010, he repeatedly asked these Defendants to refer him to provide the accommodations and refer him to a specialist to address the pain he was experiencing in his feet, including a right foot ulcer.  Plaintiff alleges that the individual Defendants declined to refer him to a specialist because of the existence of PHS policies that are based on its own profit motive.  According to the complaint, between May 31, 2010 and January 11, 2011, he submitted three separate grievances about his illnesses and his denials of care.

---

claim, Plaintiff must sufficiently allege that he is in imminent danger of serious physical injury in order to proceed *in forma pauperis*.  *See*  28 U.S.C. § 1915(g).  Plaintiff has been permitted to proceed *in forma pauperis* in this action.

By October 14, 2010, Plaintiff's feet allegedly were too swollen to fit into shoes. Defendant Abdellatif referred him to an orthopedic foot specialist, and sent numerous emails to Defendants Pandya and PHS, seeking approval for that treatment. On November 10, 2010, Defendant Abdellatif wrote a medical order for Plaintiff to receive rubber boots to protect his feet from the winter weather. When the boots arrived, they were not wide enough to accommodate Plaintiff's surgical shoes, purportedly leaving Plaintiff's foot ulcer unprotected from winter conditions. In early 2011, Defendants Abdellatif, Pandya and PHS approved Plaintiff's visit to a foot specialist surgeon. Plaintiff saw the surgeon at the end of February, at which time the specialist recommended a transmetatarsil partial amputation of the foot. The partial amputation was conducted on March 14, 2011. The specialist also advised Plaintiff that there was a substantial likelihood that his left foot would require corrective surgery in the future.

Plaintiff contends that Defendants PHS and Corizon were deliberately indifferent to his serious medical needs. He alleges that they had policies and customs of prioritizing profits over adequate medical treatment. According to Plaintiff, PHS and Corizon conspired with the MDOC and the State of Michigan, as well as the individual state Defendants to systematically withhold necessary medical accommodations and treatment. (*Id.* ¶ 50.) Plaintiff asserts that, after enduring another winter without protective shoes, he was forced to undergo another partial amputation of his right foot on May 15, 2012.

On March 10, 2011, Plaintiff allegedly sent a letter to Defendants PHS, Steele, Haresh, Pandya and LRF Health Services, seeking to be transferred to a different facility where he would receive the care he needed in a medical unit. He expressed concern about a breakdown in his

relationship with Defendants Abdellatif, Spitters and other medical personnel. Defendants allegedly ignored the letter.

Shortly thereafter, however, Plaintiff was transferred to LCF. At the time of his transfer, LCF employees allegedly knew that Plaintiff suffered a serious right foot infection and other medical conditions and knew or should have known that the failure to treat those conditions could result in serious bodily harm or death. Plaintiff alleges, however, that Defendants PHS and Corizon employees, the State of Michigan, the MDOC, and the LCF medical personnel, including Defendants Ingraham, Swartz and Curtis, conspired to deprive Plaintiff of necessary medical care. (*Id.* ¶ 70.) Prior to December 29, 2011, Defendants Ingraham, Swartz, Curtis, and Stepp held monthly grievance meetings in the A-Unit medical ward to address ongoing medical issues, including Plaintiff's medical needs and disability accommodations. Plaintiff participated, as a member of the unit. On December 6, 2011, Defendants Ingraham, Swartz, and Curtis allegedly cancelled Plaintiff's stay in the A-Unit medical ward. Plaintiff filed a healthcare kite on December 22, 2011, to which Defendant Curtis responded that Plaintiff would be moved back to the A-Unit ward as soon as a bed opened. (*Id.* ¶ 73.) Plaintiff alleges that, as a result of the transfer to a non-medical unit, he was subjected to freezing conditions that left his ulcerated foot unprotected from the cold, exacerbating the infection and ultimately leading to his second partial amputations. Sometime between December 22 and December 28, 2011, Defendants Ingraham and Curtis were hostile when they met with Plaintiff. Defendant Ingraham eventually told Plaintiff, "We are all done. . . . Get out. . . . I'm tired of you writing all these grievances threatening me. . . . I hope your leg on the rest of your right foot has to be amputated. . . . Put these statements in a grievance or one of your lawsuits against medical employees." (*Id.* ¶ 75.)

- 5 -

Plaintiff alleges that, between December 2011 and September 2012, he filed more than 15 grievances, asking for medication renewals and fulfillment of unspecified physician's orders. Plaintiff alleges that Defendant Stepp refused to act on or process one administrative grievance filed in December 2001.  On December 27, 2011, shortly after he filed a grievance against Ingraham, Ingraham allegedly fabricated a major misconduct for threatening behavior, which resulted in Plaintiff's placement in segregation.  Defendant Stepp acted as the hearing investigator, and, according to the complaint, allegedly failed to ensure that Plaintiff received a due-process hearing under MDOC policy.  Defendant Stepp purportedly ignored numerous letters from Plaintiff about scheduling a misconduct hearing.  (*Id.* ¶¶ 76-79.)  Plaintiff was transferred from LCF two days later, on December 29, 2011.  (*Id.* ¶ 68.)

On September 12, 2014, Plaintiff was transferred back to LRF,[2] despite the fact that, on March 10, 2011, Plaintiff had sent letters stating his concerns about confinement at LRF, due to the alleged breakdown in his relationships with medical providers PHS, Stelle, Pandya, Abdellatif, Masselink and Spitters.  (*Id.* ¶ 94.)  Plaintiff complains that, after the transfer to LRF, Defendants conspired to deprive him of his rights to adequate medical care and accommodations for his diabetes and Hepatitis C.  He alleges that Defendant Gracik admitted that she spoke with Defendant Remesnyder about Plaintiff's lawsuits and grievances about medical care, allegedly coming to an agreement to have Plaintiff transferred to LRF.  (*Id.* ¶ 99.)  He also alleges that, shortly after he returned to LRF, Defendants Gamez, Spitters, Gracik, Castenholz and Brewer had a meeting during

---

[2]Plaintiff's complaint lacks specifics concerning his prison placement between December 29, 2011, when he was transferred out of LCF, and September 12, 2012, when he was transferred back to LRF.  Given that Plaintiff had a surgery on May 15, 2012, and given that he sues Defendant Remensnyder, who works at DWHC, it appears that he was housed at DWHC for some portion of that time.  Plaintiff, however, provides no details about which Defendants were responsible for his denials of treatment during those nine months.

which they allegedly agreed to conspire to deprive Plaintiff of constitutional rights and to withhold

critical medical care.  Gracik purportedly ignored Plaintiff's requests for specialty shoes, medical

care and accommodations, telling Plaintiff that the only reason physicians give him anything is

because they are afraid of him and that "the only reason you were not able to pass the diabetes

education class, you were just playing games, and just pretending you could not self select your

meals, just so you could have a special diabetic diet."  (*Id.* ¶ 101.)

    In January 2013, Plaintiff was examined at Defendant DWHC Optometry Eye Clinic,

to determine the status of his diabetes-related vision impairment.  The physician concluded that

Plaintiff's diagnosis qualified him as eligible for use of a white cane, as had been found on February

24, 2012.  In addition, Plaintiff is a participant with the Michigan Commission for the Blind and

Handicapped, from which Plaintiff receives books and tapes.  Plaintiff also has an accommodation

for assignment of visual-aide communication assistance for reading and writing.  However, Plaintiff

complains that Defendants Gracik, Gamez, and Brewer took away the white cane, advising him that

he did not need it.  Plaintiff alleges that Defendants Gamez, Spitters, Gracik, Castenholz, and Brewer

conspired to remove the white-cane accommodation from Plaintiff's medical records.  (*Id.* ¶¶ 102-

04.)

    Between September 2012 and March 2013, Plaintiff allegedly asked Gracik,

Castenholz, Brewer, and DWHC Optometric Eye Clinic to provide him with accommodations and

with a referral to a specialist to address the pain and discomfort in his feet and eyes.  Defendants

allegedly refused for financial reasons.  Between October 2012 and August 2013, Plaintiff filed

numerous grievances, which were ignored.  In April 2013, Defendant Minnerick allegedly conspired

with Defendants Berghuis and Brewer to begin rejecting Plaintiff's first and second-step grievances, rendering the grievance process unavailable to him.  (*Id.* ¶¶ 105-09.)

On April 8, 2013, Plaintiff sent a letter to Defendants Brewer, Minnerick, and Berghuis and MDOC Director Heyns, objecting to Defendants' "evil motives" in failing to fulfill his physician's orders.  (*Id.* ¶ 113.)  He reiterates his claims that Defendants at LRF and other MDOC, PHS and Corizon employees were aware of his medical needs and conspired to retaliate against him, to deny him equal protection, and to violate his Eighth Amendment rights.  (*Id.* ¶¶ 114-19.)

In sum, Plaintiff contends that all Defendants conspired to violate and violated his First, Eighth and Fourteenth Amendments his rights under the ADA.  For relief, he seeks from each Defendant in his or her individual capacity $.5 million in compensatory damages and $100 million in punitive damages, together with injunctive relief.

## II.     Sovereign Immunity

Plaintiff may not maintain a § 1983 or § 1985 action against the State of Michigan, the MDOC, or the DWHC Optometry Eye Clinic.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98-101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  The MDOC is a department of the State of Michigan, and the DWHC is a facility within the MDOC.  In numerous

- 8 -

unpublished opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from suit under the Eleventh Amendment. *See, e.g.*, *McCoy v. Michigan*, 369 F. App'x 646, 653-54 (6th Cir. 2010); *Turnboe v. Stegall*, No. 00-1182, 2000 WL1679478, at *2 (6th Cir. Nov. 1, 2000). In addition, the State of Michigan (acting through the Michigan Department of Corrections or its facilities) is not a "person" who may be sued under § 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)). Therefore, the Court dismisses Plaintiff's § 1983 and 1985 claims against State of Michigan, State of Michigan, the MDOC, and the DWHC Optometry Eye Clinic.

Plaintiff also alleges that the actions of the State of Michigan and the MDOC, as well as all individual Defendants, violated the ADA. Title II of the ADA provides, in pertinent part, that no qualified individual with a disability shall, because of that disability, "be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Mingus v. Butler*, 591 F.3d 474, 481-82 (6th Cir. 2010) (citing 42 U.S.C. § 12132). In order to state a claim under Title II of the ADA, Plaintiff must show: (1) that he is a qualified individual with a disability; (2) that defendants are subject to the ADA; and (3) that he was denied the opportunity to participate in or benefit from defendants' services, programs, or activities, or was otherwise discriminated against by defendants, by reason of plaintiff's disability. *See Tucker v. Tennessee*, 539 F.3d 526, 532-33 (6th Cir. 2008); *see also Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003). The term "qualified individual with a disability" includes "an individual with a disability who, with or without . . . the provision of auxiliary aids and services, meets the essential eligibility requirements for the receipt of services or participation in programs or activities provided by a public entity." 42 U.S.C. § 12131(2).

- 9 -

The Supreme Court has held that Title II of the ADA applies to state prisons and inmates. *Penn. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210-12 (1998) (noting that the phrase "services, programs, or activities" in § 12132 includes recreational, medical, educational, and vocational prison programs). The proper defendant under a Title II claim is the public entity or an official acting in his official capacity. *Carten v. Kent State Univ.*, 282 F.3d 391, 396–97 (6th Cir. 2002). Plaintiff has named the State of Michigan and the MDOC, as well as all other Defendants in their official and individual capacities.

The State of Michigan (acting through the MDOC) is not necessarily immune from Plaintiff's claims under the ADA. The ADA "validly abrogates state sovereign immunity" for "conduct that *actually* violates the Fourteenth Amendment[.]" *United States v. Georgia*, 546 U.S. 151, 159 (2006). If conduct violates the ADA but not the Fourteenth Amendment, then the Court must determine whether the ADA validly abrogates state sovereign immunity. *Id.* At this stage of the proceedings, the Court will presume that the ADA validly abrogates state sovereign immunity for Plaintiff's ADA claims. Upon review, therefore, the Court concludes that Plaintiff's allegations are sufficient to warrant service of Plaintiff's ADA claims on Defendants State of Michigan and the MDOC.

As for the other Defendants, Title II of the ADA does not provide for suit against a public official acting in his or her individual capacity. *Everson v. Leis*, 556 F.3d 484, 501 n.7 (6th Cir. 2009). As a consequence, the Court will dismiss Plaintiff's individual ADA claims against all individual Defendants.

III.     Failure to state a claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (quoting FED. R. CIV. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr.*

*Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating federal

rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify

the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

### A.    Conspiracy

Throughout his complaint, Plaintiff makes sweeping allegations that, over a period

of four years, all Defendants conspired under §§ 1983 and 1985 to deprive him of adequate medical

treatment and accommodations and to retaliate against him for filing grievances and lawsuits.  A

civil conspiracy under § 1983 is "'an agreement between two or more persons to injure another by

unlawful action.'"  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v.

Hooks*, 771 F.2d 935, 943-44 (6th Cir. 1985)).  The plaintiff must show the existence of a single

plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the

plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused

an injury to the plaintiff.  *Id.*; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).

Similarly, to state a claim for conspiracy under § 1985, a plaintiff must allege facts showing that

(1) two or more persons conspired (2) for the purpose of depriving the plaintiff of the equal

protection of the laws and (3) that the conspirators committed an overt act (4) that injured the

plaintiff.  *See Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Smith v.

Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998) (citing *Johnson v. Hills & Dales Gen. Hosp.*, 40

F.3d 837, 839 (6th Cir. 1994)).  The § 1985 plaintiff also must demonstrate that the conspiracy was

motivated by a class based animus, such as race.  *Radvansky*, 395 F.3d at 314; *Johnson*, 40 F.3d at

839; *Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996).  Under both § 1983 and § 1985, a plaintiff

must plead with particularity, as vague and conclusory allegations unsupported by material facts are

insufficient to state a claim. *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

Plaintiff's allegations of conspiracy are conclusory and speculative. First, his claim under § 1985 fails because he makes no allegation that his alleged mistreatment resulted from race-based animus. *See Radvansky*, 395 F.3d at 314. Moreover, most of his allegations concerning conspiracy under § 1983, even viewed in the light most favorable to Plaintiff, are wholly conclusory. While Plaintiff broadly alleges the existence of meetings of health-care providers at LRF at which the LRF providers ostensibly agreed to conspire, Plaintiff's allegation is conclusory. Further, his reference to statements made by prisoner witnesses Stewart, Gaines, and Lieneman provide no factual support for his allegations of conspiracy; they merely affirm factual allegations against Defendant Gracik. In addition, no factual allegations link the conduct of officials to the conduct of other Defendants, particularly those working at different facilities. Instead, Plaintiff merely alleges a few discrete facts that occurred over a period of time involving various individual officials, and he attempts to link those facts by repetitive and sweeping claims of conspiracy. Plaintiff has provided no allegations establishing a link between any alleged conspirators or any agreement between them.

As the Supreme Court has held, such allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556. Plaintiff alleges nothing more than that Defendants must have agreed to violate the law because Plaintiff did not get what he wanted from any of the Defendants.

- 13 -

As the Supreme Court has recognized, although parallel conduct may be consistent with an unlawful agreement, it is insufficient to state a claim where that conduct "was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed . . . behavior." *Iqbal*, 556 U.S. at 680. In light of the far more likely possibility that the various incidents occurring over the long history of Plaintiff's incarceration were unrelated, Plaintiff's conclusory allegations fail to state a plausible claim of conspiracy against any Defendants.

## B. Defendants Berguis, Minnerrick, Stepp & Brewer

Beyond his broad claims of conspiracy, Plaintiff's makes no allegations against Defendants Berguis, Minnerrick, Stepp, and Brewer other than that that these Defendants failed to conduct an investigation in response to his letters and grievances, failed to process those grievances, or failed to supervise their subordinates. Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior or vicarious liability. *Iqbal*, 556 U.S. at 676; *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691(1978); *Everson v. Leis*, 556 F.3d 484, 495 (6th Cir. 2009). A claimed constitutional violation must be based upon active unconstitutional behavior. *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008); *Greene v. Barber*, 310 F.3d 889, 899 (6th Cir. 2002). The acts of one's subordinates are not enough, nor can supervisory liability be based upon the mere failure to act. *Grinter*, 532 F.3d at 575; *Greene*, 310 F.3d at 899; *Summers v. Leis*, 368 F.3d 881, 888 (6th Cir. 2004). Moreover, § 1983 liability may not be imposed simply because a supervisor denied an administrative grievance or failed to act based upon information contained in a grievance. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999). "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Plaintiff

- 14 -

has failed to allege that Defendants Berghuis, Brewer and Minnerick engaged in any active unconstitutional behavior by failing to respond to his complaints or failing to supervise their subordinates.

Moreover, to the extent that Plaintiff complains that Defendants Stepp, Minnerrick or Berghuis refused to process his grievances or placed him on modified access to the grievance process, he also fails to state a claim. Plaintiff has no due process right to file a prison grievance. The Sixth Circuit and other circuit courts have held that there is no constitutionally protected due process right to an effective prison grievance procedure. *Walker v. Mich. Dep't of Corr.,* 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003); *Young v. Gundy,* 30 F. App'x 568, 569-70 (6th Cir. 2002); *Carpenter v. Wilkinson,* No. 99-3562, 2000 WL 190054, at *2 (6th Cir. Feb. 7, 2000); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Michigan law does not create a liberty interest in the grievance procedure. *See Olim v. Wakinekona,* 461 U.S. 238, 249 (1983); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Because Plaintiff has no liberty interest in the grievance process, Defendants' conduct did not deprive him of due process.

Plaintiff also fails to state a retaliation claim against Defendant Stepp or any other Defendant based on his placement on modified access.[3] Retaliation based upon a prisoner's exercise

---

[3]Under Michigan Department of Corrections policy, a prisoner is placed on modified access for filing "an excessive number of grievances which are frivolous, vague, duplicative, non-meritorious, raise non-grievable issues, or contain prohibited language. . .or [are] unfounded . . . ." MICH. DEP'T OF CORR., Policy Directive 03.02.130, ¶ HH. (eff. July 9, 2007). The modified access period is ninety days and may be extended an additional thirty days for each time the prisoner continues to file a prohibited type of grievance. *Id.* While on modified access, the prisoner only can obtain grievance forms through the Step I coordinator, who determines whether the issue is grievable and otherwise meets the criteria under the grievance policy. *Id.*, ¶ KK.

of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378,

394 (6th Cir. 1999) (en banc).  In order to set forth a First Amendment retaliation claim, a plaintiff

must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against

him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the

adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff

must be able to prove that the exercise of the protected right was a substantial or motivating factor

in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir.

2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).  The

Sixth Circuit repeatedly has held that placement on modified access does not constitute an adverse

action for purposes of a retaliation claim.  *See, e.g., Jackson v. Madery*, 158 F. App'x 656, 660 (6th

Cir. 2005) (per curiam); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 446 (6th Cir. 2005).

   For all these reasons, Plaintiff fails to state a claim against Defendants Berguis,

Minnerrick, Stepp, and Brewer.

### C. Defendants TLC and Remensnyder

   Aside from his previous allegations of conspiracy, Plaintiff fails to allege any conduct

by Defendants TLC and Remensnyder.  Indeed, Plaintiff makes no factual allegation against

Defendant TLC, and Plaintiff only alleges that Defendant Gracik spoke to Defendant Remensnyder

by telephone before Remensnyder released Plaintiff from hospitalization at DWHC on an

unspecified date.

   It is a basic pleading essential that a plaintiff attribute factual allegations to particular

defendants.  *See Twombly*, 550 U.S. at 544 (holding that, in order to state a claim, Plaintiff must

make sufficient allegations to give a defendant fair notice of the claim).  Where a person is named

as a defendant without an allegation of specific conduct, the complaint is subject to dismissal, even under the liberal construction afforded to *pro se* complaints. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (dismissing Plaintiff's claims where the complaint did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of rights); *Griffin v. Montgomery*, No. 00-3402, 2000 WL 1800569, at *2 (6th Cir. Nov. 30, 2000) (requiring allegations of personal involvement against each defendant)); *Rodriguez v. Jabe*, No. 90-1010, 1990 WL 82722, at *1 (6th Cir. June 19, 1990) ("Plaintiff's claims against those individuals are without a basis in law as the complaint is totally devoid of allegations as to them which would suggest their involvement in the events leading to his injuries."); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994); *Krych v. Hvass*, 83 F. App'x 854, 855 (8th Cir. 2003); *Potter v. Clark*, 497 F.2d 1206, 1207 (7th Cir. 1974); *Williams v. Hopkins*, No. 06-14064, 2007 WL 2572406, at *4 (E.D. Mich. Sept. 6, 2007); *McCoy v. McBride*, No. 3:96-cv-227RP, 1996 WL 697937, at *2 (N.D. Ind. Nov. 5, 1996); *Eckford-El v. Toombs*, 760 F. Supp. 1267, 1272-73 (W.D. Mich. 1991). Plaintiff fails to even mention Defendant TLC in the body of his complaint, other than to conclusorily allege that TLC conspired with other Defendants to deprive Plaintiff of his rights. As previously discussed, Plaintiff's allegations of conspiracy are wholly unsupported. Because he makes no other allegations against Defendant TLC, his allegations fall far short of the minimal pleading standards under FED. R. CIV. P. 8 (requiring "a short and plain statement of the claim showing that the pleader is entitled to relief").

Similarly, Plaintiff alleges that Defendant Remensnyder spoke with Defendant Gracik and thereafter conspired to release him from the DWHC. Plaintiff, however, fails even to allege that he was in need of hospitalization at the time he was discharged. As a result, Plaintiff makes no

allegation of fact that Remensnyder deprived him of any right by discharging him.  The absence of allegations against Remensnyder therefore fall short of stating a federal claim.

### D.    Statute of Limitations

All of the conduct preceding Plaintiff's initial partial amputation occurred more than three years before he filed his complaint on March 19, 2014.[4]  State statutes of limitations and tolling principles apply to determine the timeliness of claims asserted under 42 U.S.C. § 1983.  *Wilson v. Garcia*, 471 U.S. 261, 268-69 (1985).  For civil rights suits filed in Michigan under § 1983, the statute of limitations is three years.  *See* MICH. COMP. LAWS § 600.5805(10); *Carroll v. Wilkerson*, 782 F.2d 44, 44 (6th Cir. 1986) (per curiam); *Stafford v. Vaughn*, No. 97-2239, 1999 WL 96990, at *1 (6th Cir. Feb. 2, 1999).  Accrual of the claim for relief, however, is a question of federal law. *Collyer v. Darling*, 98 F.3d 211, 220 (6th Cir. 1996); *Sevier v. Turner*, 742 F.2d 262, 272 (6th Cir. 1984).  The statute of limitations begins to run when the aggrieved party knows or has reason to know of the injury that is the basis of his action.  *Collyer*, 98 F.3d at 220.[5]

Plaintiff's claims concerning his treatment prior to his first amputation on March 14, 2011 are untimely.  Plaintiff had reason to know of the "harms" done to him at the time they

---

[4]Under Sixth Circuit precedent, the complaint is deemed filed when handed to prison authorities for mailing to the federal court. *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his application on March 19, 2014, and it was received by the Court on April 3, 2014.  Thus, it must have been handed to prison officials for mailing at some time between March 19 and April 3, 2014.  For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date. *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

[5]28 U.S.C. § 1658 created a "catch-all" limitations period of four years for civil actions arising under federal statutes enacted after December 1, 1990.  The Supreme Court's decision in *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369 (2004), which applied this federal four-year limitations period to a suit alleging racial discrimination under § 1981 does not apply to prisoner claims under 28 U.S.C. § 1983 because, while § 1983 was amended in 1996, prisoner civil rights actions under § 1983 were not "made possible" by the amended statute. *Id.* at 382.

occurred.  Hence, his claims accrued at the time they occurred in 2010-11.  However, he did not file

his complaint until March 2014, beyond Michigan's three-year limit.  Moreover, Michigan law no

longer tolls the running of the statute of limitations when a plaintiff is incarcerated.  *See* MICH.

COMP. LAWS § 600.5851(9).  Further, it is well established that ignorance of the law does not warrant

equitable tolling of a statute of limitations.  *See Rose v. Dole*, 945 F.2d 1331, 1335 (6th Cir. 1991);

*Jones v. Gen. Motors Corp.*, 939 F.2d 380, 385 (6th Cir. 1991); *Mason v. Dep't of Justice*, No. 01-

5701, 2002 WL 1334756, at *2 (6th Cir. June 17, 2002).

       Plaintiff argues that his late-filed claims should not be barred by the statute of

limitations because they are part of a continuing violation of his federal rights.  He alleges that his

medical treatment between May 10, 2010 and the present involve a continuous and undifferentiated

pattern of health care denials and retaliation, which he should not be expected to parcel into separate

complaints.

       The Sixth Circuit uses a three-part test to determine if a continuing violation exists:

(1) the defendants' wrongful conduct must continue after the precipitating event; (2) injury to the

plaintiff must continue to accrue after the event, and (3) further injury to the plaintiff must have been

avoidable if the defendants had at any time ceased their wrongful conduct. *Paschal v. Flagstar Bank*,

295 F.3d 565, 572 (6th Cir. 2002) (citing *Tolbert v. State of Ohio Dep't of Transp.*, 172 F.3d 934,

940 (6th Cir. 1999)).   In  *Bruce v. Corr. Med. Servs., Inc.*, 389 F. App'x 462, 466 (6th Cir. 2010),

the Sixth Circuit held that the continuing-violation doctrine did not apply to the plaintiff's Eighth

Amendment claim.  The plaintiff in *Bruce* was a prisoner in state custody.  He alleged that prison

officials denied him medical treatment for injuries he suffered while working at his prison job.  *Id.*

at 463.  He claimed that they were deliberately indifferent to his medical needs for almost five years.

*Id.* at 464.  The Sixth Circuit held that "[a]ctual acts by [a defendant] of refusing medical care represent discrete unlawful acts (beyond passive inaction) that trigger the statute of limitations." *Id.* at 467.  The Court went only to hold that acts occurring before the statute of limitations were time-barred.  *Id*.  This result corresponds with the Sixth Circuit's general disapproval of applying the continuing-violation doctrine in civil rights actions.  *Sharpe v. Cureton*, 319 F.3d 259, 267 (6th Cir. 2003) (stating that the Sixth Circuit "employs the continuing violations doctrine most commonly in Title VII cases, and rarely extends it to § 1983 actions").

In the instant case, although Plaintiff alleges that Defendants acted collectively and conspiratorily to continuously deny him care, those allegations are conclusory.  Plaintiff's complaint contains few specific alleged acts by each individual Defendant.  Instead, Plaintiff seeks to hold all Defendants liable for every medical decision made by any individual Defendant.   Plaintiff's allegations of a continuing violation depends entirely on his previously rejected view that each Defendant's act was part of a conspiracy to deprive him of his rights.  Where, as here, factual allegations against any Defendant are particularly thin, and where the actions occurred at multiple facilities over multiple years, Plaintiff fails to demonstrate that any particular Defendant's wrongful conduct continued into the statutory period.  Under these circumstances, the application of the continuing-violation doctrine is particularly inapplicable.  *See Bruce*, 389 F.3d at 466; *Sharpe*, 319 F.3d at 267.[6]

---

[6]The Court notes that Plaintiff had ample opportunity to litigate his pre-March 2011 claims.  Indeed, Plaintiff filed a civil rights complaint against Defendants PHS, Steele, Abdellatif, Pandya, Masselink, Spitters and Corizon in June 2011.  *See VanDiver v. Prison Health Services, Inc. et al.*, No. 1:11-cv-574 (W.D. Mich.).  The Court initially denied Plaintiff leave to proceed *in forma pauperis*, because he previously had filed three actions that were dismissed as frivolous, malicious or for failure to state a claim under 28 U.S.C. § 1915(g), and it subsequently dismissed the action for lack of prosecution when Plaintiff failed to pay the filing fee.  *See id.* (docket ##16, 17.) The Sixth Circuit ultimately held that Plaintiff was entitled to proceed *in forma pauperis*, and this Court reopened the case on September 10, 2013.  *Id.* (docket #24). Over the course of the next four months, Plaintiff made multiple motions to supplement the complaint,

As the Supreme Court has held, if the allegations "show that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim . . . ." *Jones v. Bock*, 549 U.S. 199, 920-21 (2007). Because Plaintiff's pre-March 2011 claims are barred by the statute of limitations, those claims will be dismissed. Further, because Plaintiff makes no allegations about the conduct of LRF medical Defendants Steele, Abdellatif, Pandya, Masselink, and Spitters after March 2011, his claims against them must be dismissed.

### E.    Remaining Defendants

Upon review, the Court concludes that Plaintiff has made sufficient allegations against Defendants Prison Health Services, Inc., Corizon, State of Michigan and Michigan Department of Corrections, Ingraham, Swartz, Curtis, Gamez, Worel, Gracik and Castenholz.

### <u>Conclusion</u>

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Defendants Steele, Abdellatif, Pandya, Masselink, Stepp, Remensnyder, Minnerick, Berghuis, Duane Waters Health Center Optometry Eye Clinic, TLC Optometry Eye Clinic, Spitters, and Brewer will be dismissed for failure to state a claim pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court will serve the complaint against Defendants Prison

---

together with numerous motions on other matters. The Court issued multiple orders in an attempt to obtain an amended complaint containing all of Plaintiff's allegations and copies of that amended complaint for service. On January 22, 2014, the Court dismissed the action for lack of compliance with repeated orders of the Court. *Id.* (docket ##51-52). The fact that the statute of limitations has now expired on Plaintiff's pre-March 2011 allegations arises from Plaintiff's own disregard of the orders of this Court and his abusive litigation practices. An equitable doctrine such as the continuing-violation doctrine is inapplicable in these circumstances. *See Austion v. City of Clarksville*, 244 F. App'x 639, 647 (5th Cir. 2007) (holding that the continuing-violations theory is a specific equitable doctrine) (citing *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 829 (6th Cir. 2000)).

Health Services, Inc., Corizon, State of Michigan, Michigan Department of Corrections, Ingraham,

Swartz, Curtis, Gamez, Worel, Gracik, and Brewer.

     An Order consistent with this Opinion will be entered.


Dated:     May 21, 2014        /s/ Robert J. Jonker
                                       ROBERT J. JONKER
                                       UNITED STATES DISTRICT JUDGE